Case number 14-2155, Oakwood Healthcare Incorporated v. Oakwood Hospital Employees Local 2568. Arguments not to exceed 15 minutes per side. Mr. Flynn for the appellant. Good morning, Your Honor. May it please the court, my name is Keith Flynn. I'm an attorney with Miller Cohen. I represent defendant appellant AFSCME Council 25 and its affiliate Local 2568. The court issue in this case, Your Honor. Excuse me. We're still not getting a light. We had one during part of the previous argument, but we don't have a light now. I don't care if we don't have a light. I just want you to know that if we don't have one, you've got to tell me what's going on. Sure. We're back up to the jumping up method. Okay. All right. Go ahead. Also, defendant appellant would like to reserve three minutes of its argument for rebuttal. The court issue in this case, Your Honor, is who has authority and should resolve disputes as to the meaning of a collective bargaining agreement. Should it be the arbitrator selected by the parties to the contract pursuant to that contract, or should it be the district court judge after an arbitrator has already resolved the matter? Despite the obvious concerns over judicial economy and labor stability that the latter jeopardizes, appellee argues that such disputes are within the purview of the federal judiciary. This assertion is in conflict with over 50 years of federal precedent to the contrary, however. The standard of review afforded arbitration decisions has long been one of the narrowest standards of judicial review in all of American jurisprudence. As long as the arbitrator's award draws its essence from the agreement, arbitration decisions are upheld. Quote, so long as an arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the fact that a court is convinced that he committed serious error does not suffice to overturn his decision. And that's the U.S. Supreme Court decision, Major League Baseball Players Association versus Garvey. Same language can be found in the Sixth Circuit decision, Michigan Family Resources Incorporated, which was issued in 2007. Only where the parties have specifically and expressly agreed to exclude a particular question from arbitration should district court consider reversing an arbitration decision. In all due respect, the lower court's decision in this matter turns that matter on its head. Instead of an arbitrator who's been contractually agreed upon deciding interpretation and application, the district court judge stood in those shoes and did that on their own accord. The lower court held that the arbitrator acted outside the scope of his authority by practically converting an employee's termination for a major work rule violation into an unpaid 15-month suspension. Yet Article 3.1B of the Collective Bargaining Agreement states that the grievance procedure, quote, is the means for the peaceful settlement of all disputes that may arise between concerning the interpretation or application of this agreement. Not just one kind of dispute, whether or not the grievant did it, but also as to the degree of discipline that's imposed. The Collective Bargaining Agreement goes on to further provide the arbitrator with authority to interpret and apply the agreement pursuant to Article 3.2, Step 4C. The provision that the arbitrator was interpreting and applying in this case was Article 4.1A, and that provision provides that the employer's decision to discipline or to discharge must be for just and proper cause. The lower court noted that just and proper cause is not expressly defined by the agreement and is ambiguous. At this point, Your Honor, at this point, the arbitrator's decision was no longer within the scope of the district court's standard of review. At this point, once it's ambiguous, it's up to the arbitrator to determine what that term means based off of the authority granted to the arbitrator under the Collective Bargaining Agreement. Pursuant to the Eberhard case and the Dixie Warehouse case, both were Sixth Circuit decisions, this court defers to the arbitrator's construction where an agreement is ambiguous. Regardless of whether the district court disagreed with the arbitrator's interpretation, so long as the arbitrator was even arguably interpreting the agreement, the arbitrator decision should have been affirmed because the parties contracted to have that arbitrator decide, not the district court. Here, there have been three separate arbitrators who have interpreted this very same language to provide the arbitrable authority to reduce a termination to a suspension for a major work rule violation is in accords with the Collective Bargaining Agreement. Appellee argues that these arbitration decisions should be stricken from the record, but appellant is only citing these cases as persuasive authority, just like you'd cite an unpublished district court case and attach it to your brief, so too did appellant cite to these arbitration decisions to help to illuminate how other arbitrators have interpreted this very same language, which according to the U.S. Supreme Court in the famous Steelworkers Trilogy, one of the reasons why we defer to labor arbitrators is because of their particular and nuanced knowledge base that specifically pertains to the workplace. Well, arbitrators don't have any particular expertise in construing a contract that courts don't have, so what are we talking about in terms of their particular expertise? Well, in what the U.S. Supreme Court had stated in the Steelworkers Trilogy is that there is that nuanced workplace. Obviously, if an arbitrator has spent his career focusing on the labor contract collective bargaining agreements, collective bargaining agreements are different because collective bargaining agreements represent a mechanism by which we establish a relationship between employer and its employees that is an evolving process. Well, you know, I understand arbitrators get to be wrong about their interpretation of the contract, but if you look at the particular contractual provision, there is a very strong argument that the jurisdiction of the arbitrator extended only to the decision to discharge or discipline, not to a broader ability to decide whether the degree of discipline was appropriate. Well, in its appellant's position, obviously, there's nothing in the collective bargaining agreement that expressly precludes an arbitrator from looking at the degree of discipline. In fact, the exact opposite is the case. So the primary article that appellee relies upon is Article 8.1, which is the management rights provision of the contract. Now, courts have held on numerous times that management rights clauses merely establish what exists except for what's in the agreement. So the management starts off with these rights. They can manage and operate. They can make and enforce work rules. They can discipline or discharge. But in ways in which the collective bargaining agreement limits that power and authority, those limitations have to be enforced by an arbitrator. So in this case, literally about a third of Article 8.1 was completely omitted in the argument by appellee. So what I'm specifically referring to, while Article 8.1 provides sole discretion to the employer to manage and operate the business, including establishing and enforcing work rules, it goes on to say so long as such rules and regulations are not inconsistent with this agreement, including the just cause provision. In addition, Article 8.1 continues to go further and states that employees who violate the rules and regulations and are aggrieved by the discipline that they receive have recourse to the grievance procedure, which ends in final and binding arbitration. Now, another provision that appellee cites to on appeal, which actually goes to support appellant's point of view in terms of what the contract means, is a provision that deals only with absenteeism. There's a provision that states that the arbitrator cannot touch upon the progressive discipline that's been negotiated or the work rules that have been negotiated as it pertains to absenteeism. And the reason why this is important is because that policy that was negotiated by the parties is actually in the collective bargaining agreement. There's no such provision for a major work rule violation, no such provision that would limit the arbitrator's authority to determine the degree of discipline to be imposed. And courts have routinely found that when a management rights provision is limited by its very terms, that that deference remains in the hands of the arbitrator to determine the remedy. And the cases that appellant cites to for that proposition would be the MidMichigan case, the progressive case, the Bunting-Bearing case. Furthermore, not only is it the fact that the language states what the language states and has been interpreted by courts on many occasions to mean what appellant is suggesting today, furthermore, the cases cited to by the appellee are in opposite to what is currently at bar. For instance, Toshiba, America. In that case, the agreement specifically stated any disciplinary action, including discharge, taken as a result of the no-strike clause shall not be altered or amended by an arbitrator. Nothing expressly exists in the Oakwood agreement to that effect whatsoever. In fact, the exact opposite exists. Notably, other cases that appellee cites to for the same proposition include the St. Mary's case. In the St. Mary's case, the work rule stated that employees found to be in violation of the work rule dealing with sleeping on the job will be immediately terminated as a first offense. Again, our language in the work rules here at bar states that they may be suspended for three to five days or they may be terminated. When it's elective, as it is in that case, the Titan Tire Corporation case indicates that arbitrators maintain deference to decide the appropriate remedy. Similarly, appellee cites to the Nestle case. In that case, the CBA actually defined the term just cause, unlike the case at bar, and defined it to state that just cause for discharge includes the violation of the work rule that was involved in that case. Again, nothing like that in Oakwood. In Morgan Services, the agreement stated that the employees found guilty of insubordination may be terminated without redress. Here it says Article 8.1 says that you have recourse to the grievance procedure. The work rule similarly required termination in that case. Again, not in our case. Now, I would like to finish off by discussing the public policy argument. Appellee continues to advocate and appeal that arbitration decisions, that this decision violates the public policy in regards to keeping cleanly kitchens. But the issue here is not whether or not the conduct of the employee constitutes an explicit violation of a well-defined and dominant public policy. It's whether the arbitrator's award does. And here the arbitrator's award of reinstating the employee after 15 months of unpaid suspension, when the employee never had any issue like this on his record before, was a good performer, and just recently had received accolades that same very month, it flies in the face of the... I don't know that you ought to argue the merit of the employee's position. I think most employers would have wanted him out of there. Could I ask one question before you sit down? You said there was a stated limitation in the collective bargaining agreement. What was that? In contrast to whether a major work violation occurred or the discipline, therefore. Well, the only stated limitation on an arbitrator's authority in the collective bargaining agreement to determine the degree of discipline to impose dealt specifically with the absenteeism policy. Absenteeism. Okay, thank you. Good morning, Your Honors. Paul Wilhelm on behalf of Appley Oakwood. This is a very simple case. Despite the depth and breadth of the briefing and the various issues addressed therein, this case is very straightforward. The CBA, along with the work rules, governed the dispute that was presented to the arbitrator. The arbitrator and his... The dispute that occurred before the arbitrator didn't occur in a vacuum. It concerned a major work rule violation, and that begins right with the corrective action form that the union grieved. And that corrective action form cites this major work rule which is at issue, Work Rule 117. And what occurred here, the challenged adverse action was a suspension pending investigation that resulted in a discharge. Now, in the CBA, importantly, Oakwood negotiated for and received the right to make and enforce the work rules. And as Appellant indicated, it's Oakwood's sole right to do so. The arbitrator can't make the work rules. The arbitrator can't enforce the work rules. That's because Oakwood negotiated for a jurisdictional limit on the arbitrator's function. Specifically, that limit bars the arbitrator from substituting discretion for anywhere Oakwood retained discretion, and it bars the arbitrator from exercising any of Oakwood's functions or responsibilities. The effect of the combination of the CBA and the work rules is that there are certain offenses for which termination, even immediate termination, is always justified. That is, just cause exists for termination. Now, the union would like to read the work rules out of the contract. They would like to read the work rules out of the dispute. I thought, really, I thought the question was not the work rules. I mean, the arbitrator was looking at the correct work rule, 117. Is that right? I mean, he wasn't wrong about which work rule we're talking about. And so that's not in question. The question is whether the arbitrator had the authority to review the discipline that was involved. Isn't that, plain and simple, what's at issue here? That's ultimately the issue. All right. And so I'm looking at Section 8.1 of the CBA, which says any employee who violates or fails to comply therewith, meaning the work rules, may be subject to discipline  in the event the employee feels aggrieved by such discipline. Maybe you could argue that this creates some ambiguity about whether the arbitrator has the authority to review the discipline. I don't see how you can make that argument, but that's the best you're going to be able to do because this clearly throws the discipline into the grievance procedure, which culminates in arbitration. I would respectfully disagree with that, Your Honor, and here's why. There are three provisions in the CBA which combine together. The problem is it doesn't really matter. I'm interrupting you probably when I should. It doesn't really matter whether you agree that that's a proper interpretation of the collective bargaining agreement because as long as the arbitrator is even arguably construing it, we don't get involved. And there are a couple of ways you could read this contract, one of which Judge Daughtry just referred to, that mean we have no authority whatever, even if the arbitrator is badly wrong. What we have to do in looking at this... And the arbitrator may or may not be badly wrong. What we have to do, Your Honor, here is look at the totality of the language of the limitation of the arbitrator's jurisdiction. There are three provisions which combined make it clear and explicit that the arbitrator exceeded his jurisdiction here. Number one, in Section 4.1A of the CBA, the language notes that the principle of progressive discipline is recognized except in cases of serious offenses justifying immediate termination. That's a reference to the work rules. Well, just above that, though, it says that the employer has the right to discharge or discipline a seniority employee for just and proper cause. And the just and proper cause question was what was before the arbitrator. Am I right? And so discipline is part of whether there was a discharge or just discipline short of discharge is a matter of determination under the just and proper cause clause. Well, the issue of just cause is necessarily before the arbitrator. Right. But the issue here is was the arbitrator's jurisdiction limited when it came to a violation of a major work rule, which he found that Mr. Curry was guilty of. Well, you know, if you interpret the word discipline as referring to the degree of sanction or penalty, and if you commit that to the grievance process, and if you use just and proper cause in a way that modifies both discharge and discipline, it seems like you've committed to the arbitration process, arguably the right to determine whether the discipline was just and proper as opposed to just the decision about the violation of the work rule. Although the arbitrator gets to review that, too. The issue comes down to the fact that the CBA provided Oakwood with the right to enforce the work rules, almost like a legislative and executive function. It has the right to make them and to enforce them. And the arbitrator's role is limited. Well, if it had the complete right to enforce them, it wouldn't be subject to arbitration or grievance or, for that matter, court review or anything else. Your Honor, the arbitrator does have an important role, and in part he provided his important role here, which was to apply the work rule to the facts and to apply the issues raised in the penalty, the range of penalties available to Oakwood. Well, there was a range of penalties. Are you conceding there was a range of penalties? Absolutely. This work rule 117 doesn't require immediate termination and no other alternative. That's correct, and it's a good thing for the employees that it doesn't. Okay. And so there's a range of discipline, and these provisions in 4.1a and in 8.1 create a situation where the discipline that's imposed is subject to review by arbitration. In this case, they discharged him, and the arbitrator thought that was too much and went into the range. Your Honor, the important limitation here that is in none of the cases cited and relied upon by the union is the third of the three provisions I wanted to mention. There's 4.1a, 8.1. Well, let me go back just a minute to my question because I, with all due respect, don't think you're about to answer it. So the employer discharges for a violation of Rule 117, and what would be arbitrable in that scenario? What could the arbitrator, all he can say is, yes, there was a work rule violation or no, there wasn't? Is that all he could do? There's two parts of his job in that case. Okay. Number one, was he guilty of the offense as charged? Okay. Number two, did Oakwood apply an available remedy, a remedy that was available to it? And if you look at the allied waste case that the union heavily relies upon, there's an important distinction there. In that case, the arbitrator disagreed with the employer who was arguing, in essence, a major work rule violation, a Section 1 violation, but the arbitrator found a Section 2 violation and the employer tried to still, in any word, reinstatement because Section 2 did not permit the employer to discharge. The employer tried to vacate the decision. The Sixth Circuit, this court, decided that the arbitrator had the right. There's no argument. There's no dispute here that we're talking about Work Rule 117. So that's a whole different case, isn't it? Are we talking about 117? Everybody agreed on that? Yes, Your Honor, that's correct. And the critical point is the limitation on the arbitrator's jurisdiction is set right there in Step 4C, and this is a limitation that's not contained in any of the cases relied upon by the union. It's unique to this contract. What language are you looking at in 4C? The arbitrator does not have jurisdiction to substitute discretion for that of Oakwood or to exercise any of Oakwood's functions or responsibilities. Well, that's fine, but other parts of the agreement says that the employee can grieve the discipline that was imposed. Doesn't that at least create an ambiguity as to what the authority of the arbitrator is? If you give the language in 4C the meaning that you want us to attach to it. This is a more specific provision in that it goes in line with Section 8.1, in which Oakwood is given the sole right to make and enforce the work rules, and the arbitrator is precluded from invading upon that function or responsibility. But what does it mean that any employee who violates or fails to comply with the work rule may be subject to discipline and may grieve that form of discipline? What does that mean? Why is that there? Well, the employee may grieve it if it's not consistent with the work rules, and if it's not consistent with— No, it just says if he feels aggrieved by it. It doesn't limit it in any way. He's aggrieved by the discipline. He can take it to grievance. But there's a separate provision limiting the arbitrator's jurisdiction, and that's unique to this Oakwood contract. It does not exist in the cases relied upon. So does that mean—let me ask you this. Isn't the degree of discipline typically reviewable in the grievance process? I mean, don't folks grieve all the time saying I admitted the violation or even if they don't admit the violation? If I violated the rule, the discipline is too harsh? I'm not sure if you're asking about this contract or in general, Your Honor. Well, I'm asking just generally, well, is it available under this contract? The ability of the grievance process to contest the degree of discipline. Only to the extent that the degree of discipline falls outside the available range assigned to Oakwood. For example, if somebody grieved the discipline for a minor— Well, but you don't claim that the only discipline that Oakwood could have imposed here was discharge, do you? No, absolutely not. Well, then, if the degree of discipline is subject to the grievance process, a whole range of discipline might be considered in connection with the grievance process, right? That might be true if there was no limitation on the arbitrator's jurisdiction. What is it? I mean, what's the arbitrator other than the culmination of the grievance process? And where's the language that says, you know, in the earlier steps of the grievance procedure, it's possible to get the degree of discipline reviewed, but it's not possible when you get to the arbitrator. Where am I going to find that in the contract? That Oakwood is given the sole right to make and enforce the work rules. The work rules set forth— But once you make it subject to a reviewable process outside of that, you've got to limit in some way, it seems to me, the review mechanisms more specifically. I mean, the fact that you had the power to do it in the first instance doesn't mean you're the final say-so if you've also agreed to a review mechanism. Your Honor, in the Morgan Services case, for example, I think your question brings to mind the permissive nature of Oakwood's available remedies. Oakwood may decide to suspend, may decide to terminate. This was the distinction that the union relies upon in trying to distinguish the SEIU health care case. And in footnote 9 of the Morgan Services case, this court—I see my time is up. May I finish my thought? Very briefly. Thank you, Your Honor. The only effect of the word may is to indicate that the sanction of discharge is within the employer's discretion. I think we got it. All right. You have your rebuttal time, Mr. Flynn. Thank you, Your Honor. To finish up the analysis in regards to Morgan Services, you can directly juxtapose that case with the Titan Tire case. In Titan Tire, the court had to interpret subject to, the subject to language, and the agreement or the work rules indicated that the individual was subject to suspension or discharge, kind of similar to the language in these work rules. And the court found in that case they had created an elective process which was bound to be interpreted and applied by the arbitrator. So the arbitrator sits in, says, okay, well it could have been suspension, could have been discharge. I'm going to look at what is appropriate pursuant to the collective bargaining agreement and mitigating factors come into play under the just cause provision. And so the court said we're going to affirm that arbitrator's decision versus Morgan Services where the language is completely different. The language in Morgan Services dealt with, the collective bargaining said that if an employee is found guilty of insubordination, they may be immediately terminated without redress. Okay, well, that's limiting the arbitrator's decision-making authority. That's different than what we have here. And then further on, the work rules actually stated quite clearly that insubordination will lead to immediate discharge. Again, ours is elective, so it's subject to arbitrable review. One other point that I wanted to clarify that I noticed from Brother Counsel's argument deals with a provision in 4.1a dealing with progressive discipline. And it says for instances where the employee's conduct is of a serious, and let me pull up the language real quick before I go any further. So the language, so if an offense is a serious offense justifying discharge, in that case, the arbitrator won't use progressive discipline. That didn't happen here, and the term serious offense justifying discharge is subject to arbitrable review. It's unclear what it means. It's been interpreted by other arbitrators who've interpreted this contract. For instance, the upper wall arbitration decision we attached to our brief. So just because it's a major work violation doesn't mean it's the same thing as a serious offense justifying discharge. Even if they were the same thing, arbitrator Rommel didn't even take into consideration progressive discipline. If he had, then the grievant would have delayed suspension instead he received a 15-month unpaid suspension. Instead he looked at past performance, his accolades, and did not consider progressive discipline. Thank you. We thank you both for your argument. We'll consider the case carefully. Thank you, Your Honor.